**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
Eleanor R. Grasso (*Pro Hac Vice Forthcoming*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: pfraietta@bursor.com
        egrasso@bursor.com

**BURSOR & FISHER, P.A.**
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: sbogdanovich@bursor.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA OLIVA, CARLA FEDERATION, TARA ANDERSON, ELIA ("ELLIE") SANTANA, CHRISTOPHER DENNIS, and LISA OWENBY, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| MOODSWINGS, LLC, | |
| Defendant. | |

CLASS ACTION COMPLAINT

Plaintiffs Amanda Oliva, Carla Federation, Tara Anderson, Elia "Ellie" Santana, Christopher Dennis, and Lisa Owenby bring this action on behalf of themselves, and all others similarly situated against Moodswings, LLC ("Moodswings" or "Defendant").  Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      For years, Defendant has been nickel and diming its customers buying tickets to its immersive music and art cinematic projection WORLDS® shows, entitled Mesmerica 360, Mesmerica XL, and Beautifica 360 (collectively "the Shows"), in New York, Connecticut, California, Maryland, Colorado, and Tennessee, in violation of those states' consumer protection laws.  When a consumer browses one of Defendant's websites to purchase tickets to one of its Shows, https://tickets.mesmerica.com/ or https://tickets.beautifica.show/, he or she is quoted a fee-less price, only to be ambushed with a fee after clicking through the various screens required to make a purchase.  This cheap-trick—sometimes referred to as drip-pricing—enables Defendant to swindle substantial sums of money from its customers.

2.      To stop this hustle, in August 2022, New York passed New York Arts and Cultural Affairs Law § 25.07(4), which provides that "every operator … of a place of entertainment … shall disclose the total cost of the ticket, inclusive of all ancillary fees … *prior to* the ticket being *selected for* purchase." *Id*. (emphasis added).  "The price of the ticket shall not increase during the purchase process." *Id*. In the months and years that followed, California, Colorado, Connecticut, Maryland, and Tennessee followed suit.  *See* Cal. Civ. Code § 1770(a)(29); C.G.S.A. § 53-289a; Colo. Rev. Stat. § 6-1-720; Md. Code, Com. § 13-310.1; Tenn. Code § 47-50-121.

3.      As the New York state senator that primarily drafted the New York law, James Skoufis, told a New York Federal Court, companies like Moodswings "purposefully obfuscate the 'all-in price'" of an event because they "know they can capitalize on the emotions of consumers."[1]

---

[1] *Charles v. Color Factory, LLC,* Case No. 1:24-cv-322-JSR, ECF No. 21, at 2 (S.D.N.Y. Apr. 5, 2024).

"This loathsome behavior ... is exactly what the New York State Legislature attempted to preclude, and it should not be permitted."[2] "[T]he unmistakable objective" of the law was to "require[] removing all 'clicks' and subsequent page views from the purchasing process."[3] Simply put: "the first price you see for a ticket should be the price you pay for a ticket."[4]

4.      Other state's lawmakers agreed.   As California state senator Bill Dodd put it: "'Californians are fed up with dishonest fees being tacked on to seemingly everything ... It's an underhanded trick to boost corporate profits at the expense of those who can least afford it. Our bill will end these unfair practices and put the consumer first, leveling the playing field for reputable businesses that advertise the real price up front.'"[5] California Attorney General Rob Bonta added: "We can and should stop the fleecing of consumers. We can and should stop the imbalance in the marketplace."[6]

5.      For these reasons, Plaintiffs seek relief in this action individually, and on behalf of all other ticket purchasers for Defendant's Shows in the states of New York, Connecticut, California, Maryland, Colorado, and Tennessee for statutory and/or actual damages, reasonable attorneys' costs and fees, and injunctive relief.  *See* N.Y.  Arts & Cult. Aff. Law § 25.33; C.G.S.A. §§ 42-110g, *et seq.*; Cal. Civ. Code § 1780(a); MD Code § 13-408(a); Colo. Rev. Stat. § 6-1-113(2.9); Tenn. Code § 47-18-109(a)(1).

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendant.  Defendant sold at least 100,000 tickets to showings of its immersive music and art cinematic projection Shows in the states of New York, Connecticut,

---

[2] *Id.*
[3] *Id.* at 1-2.
[4] *Id.* at 1.
[5] OFFICE OF THE ATTORNEY GENERAL, CALIFORNIA DEP'T OF JUSTICE, Attorney General Bonta Calls for California Legislature to Ban Hidden Fees (AKA Junk Fees) (May 16, 2023), https://oag.ca.gov/news/press-releases/attorney-general-bonta-calls-california-legislature-banhidden-fees-aka-junk (last visited Dec. 24, 2024).
[6] *Id.*

California, Maryland, Colorado, and Tennessee through its websites,

https://tickets.mesmerica.com/ and https://tickets.beautifica.show/, during the applicable class

period, and is liable for at least $50 in statutory damages (or more in actual damages for each ticket

sold, whichever is greater) in New York, and actual damages in Connecticut, California, Maryland,

Colorado, and Tennessee.

7.    This Court has personal jurisdiction over Defendant because it maintains its

principal place of business in California.

8.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant's

principal place of business is located in this District.

**PARTIES**

9.    Plaintiff Amanda Oliva is an individual consumer who, at all times material hereto,

was a citizen and resident of Staten Island, New York.  On May 12, 2025, Plaintiff Oliva purchased

two Adult tickets to Mesmerica 360 in Staten Island, New York through Defendant's website,

https://tickets.mesmerica.com/.  The transaction flow process she viewed on Defendant's website

was substantially similar as that depicted in Figures 1-13 of this Complaint.

10.    Plaintiff Carla Federation is an individual consumer who, at all times material

hereto, was a citizen and resident of East Haven, Connecticut.  On July 15, 2025, and on July 28,

2025, Plaintiff Federation purchased a total of six tickets to Mesmerica 360 in Bridgeport,

Connecticut through Defendant's website, https://tickets.mesmerica.com/.  The transaction flow

process she viewed on Defendant's website was substantially similar as that depicted in Figures 1,

2, 14-24 of this Complaint.

11.    Plaintiff Tara Anderson is an individual consumer who, at all times material hereto,

was a citizen and resident of Moraga, California.  On January 6, 2025, Plaintiff Anderson

purchased a total of four ticket to Beautifica 360 in Oakland, California through Defendant's

website, https://tickets.beautifica.show/.  The transaction flow process she viewed on Defendant's

website was substantially similar as that depicted in Figures 1, 2, 25-35 of this Complaint.

12.    Plaintiff Elia ("Ellie") Santana is an individual consumer who, at all times material hereto, was a citizen and resident of Laurel, Maryland.  On or around May 2025, Plaintiff Santana purchased three VIP tickets to Mesmerica 360 in Catonsville, Maryland through Defendant's website, https://tickets.mesmerica.com/.  The transaction flow process she viewed on Defendant's website was substantially similar as that depicted in Figures 1, 2, 36-46 of this Complaint.

13.    Plaintiff Christopher Dennis is an individual consumer who, at all times material hereto, was a citizen and resident of Lakewood, Colorado.  On or around January 2025, Plaintiff Dennis purchased four VIP tickets to Mesmerica 360 in Boulder, Colorado through Defendant's website, https://tickets.mesmerica.com/.  The transaction flow process he viewed on Defendant's website was substantially similar as that depicted in Figures 1, 2, 47-57 of this Complaint.

14.    Plaintiff Lisa Owenby is an individual consumer who, at all times material hereto, was a citizen and resident of Johnson City, Tennessee.  In June 2025, Plaintiff Owenby purchased two VIP tickets to Mesmerica 360 in Kingsport, Tennessee through Defendant's website, https://tickets.mesmerica.com/.   The transaction flow process she viewed on Defendant's website was substantially similar as that depicted in 3, 4, 60-70 of this Complaint.

15.    Moodswings, LLC is a California limited liability company with its principal place of business at 2108 N. Ste. N., Sacramento, CA 91003.  Moodswings owns and operates the https://tickets.mesmerica.com/ and https://tickets.beautifica.show/ websites, which are platforms used to sell tickets to its immersive music and art cinematic projection Shows at one of its 40 locations across the United States.

## RELEVANT FACTUAL ALLEGATIONS

16.    When a consumer visits the https://tickets.mesmerica.com/ or https://tickets.beautifica.show/ websites, on the main page, he or she can click a "Choose Your City" button.  Clicking that button will bring he or she to another page presenting the specific

locations where a consumer can purchase tickets to attend one of Defendant's Shows. *See* Figures 1 to 4, below and next page.



**Figure 1**



**Figure 2**



**Figure 4**



**Figure 3**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**New York Location Transaction Flow**

17.    After a consumer selects one of the New York locations, he or she is taken to a "BOOK NOW" screen specific to one of Defendant's Shows in the New York location.  *See* Figure 5.



**Figure 5**

18.    If a consumer clicks the "BOOK NOW" button, he or she is taken to a "Book Tickets" screen that has a calendar with dates where tickets are still available to purchase for admission to the Show.  *See* Figure 6.



**Figure 6**

19.     Once a consumer clicks on a date where tickets are available, he or she is taken to a screen showing available times to purchase tickets to the Show, with starting prices listed for each time.  *See* Figures 7 and 8.



**Figure 7**



**Figure 8**

20.     When a consumer clicks a specific time, he or she is brought to another screen to "Select tickets" for purchase, which shows offerings of different ticket types, such as Adult, VIP, or VIP+.  The ticket prices, which increase from the starting prices advertised in Figure 7,  are presented below the ticket types.  *See* Figure 9.



**Figure 9**

21.     However, these are not accurate ticket prices either, because they fail to disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid, in violation of New York Arts & Cultural Affairs Law § 25.07(4).  This is confirmed when a consumer actually selects a particular ticket for purchase on this "Select tickets" screen.  If a consumer selects the Adult ticket on Figure 7, the ticket is added to the "Shopping cart" on the side of the screen that shows the total cost of the ticket is *actually* $39.74, not $35.50, because Defendant applied an undisclosed $4.24 fee to the ticket.  The consumer is also told that Defendant "will reserve" the ticket selected and that he or she has "15 minutes to complete the order."  *See* Figures 10 and 11, next page.



**Figure 10**



**Figure 11**

22.    When a consumer clicks "Proceed" on Figure 10, he or she is taken to another screen offering additional add-ons to purchase.  *See* Figure 12.



**Figure 12**

23.    After a consumer clicks another "Proceed" button, he or she is taken to a screen asking them to either register/log in, or to proceed as a guest and input their personal information. On the side of the screen, a "Purchase overview" is provided presenting a new total: $45.47, which is substantially greater than the original price of the ticket selected by the consumer *before* Defendant disclosed their ancillary fees and taxes at the beginning of the ticket selection process. The consumer is also notified at the top of the screen they have 15 minutes remaining to check out. *See* Figure 13, next page.



**Figure 13**

24.     After a consumer either opts to sign in or to proceed as a guest, he or she may scroll to the final "Proceed to payment" screen.  *See* Figure 14.



**Figure 14**

25.     To complete the transaction, the site requires the consumer to input their payment information to pay the now final total amount.  *See* Figure 15.



**Figure 15**

**Connecticut Location Transaction Flow**

26.     After a consumer selects one of the Connecticut locations from the screen shown in Figure 2, he or she is taken to a "BOOK NOW" screen specific to one of Defendant's Shows in the Connecticut location.  *See* Figure 16.



**Figure 16**

27.     If a consumer clicks the "BOOK NOW" button, he or she is taken to a "Book Tickets" screen that has a calendar with dates where tickets are still available to purchase for admission to the Show.  *See* Figure 17.



**Figure 17**

28.     Once a consumer clicks on a date where tickets are available, he or she is taken to a screen showing available times to purchase tickets to the Show, with starting prices listed for each time.  *See* Figures 18 and 19, below and next page.



**Figure 18**

1
2
3
4
5
6
7
8
9
10



**Figure 19**

11    29.    When a consumer clicks a specific time, he or she is brought to another screen to

12  "Select tickets" for purchase, which shows offerings of different ticket types, such as Adult, VIP,

13  or Adult Reduced.  The ticket prices, which increase from the starting prices advertised in Figure

14  18,  are presented below the ticket types.  *See* Figure 20.

15
16
17
18
19
20
21
22
23
24
25
26



27    **Figure 20**

28

30.     However, these are not accurate ticket prices either, because they fail to disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid, in violation of the Connecticut General Statutes § 53-289a.  This is confirmed when a consumer actually selects a particular ticket for purchase on this "Select tickets" screen.  If a consumer selects the Adult ticket on Figure 20, the ticket is added to the "Shopping cart" on the side of the screen that shows the total cost of the ticket is *actually* $31.18, not $27.50, because Defendant applied an undisclosed $3.68 fee to the ticket.  The consumer is also told that Defendant "will reserve" the ticket selected and that he or she has "15 minutes to complete the order."  *See* Figures 21 and 22, below.



**Figure 21**



**Figure 22**

31.     When a consumer clicks "Proceed" on Figure 21, he or she is taken to another screen offering additional add-ons to purchase.  *See* Figure 23.



**Figure 23**

32.     After a consumer clicks another "Proceed" button, he or she is taken to a screen asking them to either register/log in, or to proceed as a guest and input their personal information. On the side of the screen, a "Purchase overview" is provided presenting a new total: $35.06, which is substantially greater than the original price of the ticket selected by the consumer *before* Defendant disclosed their ancillary fees and taxes at the beginning of the ticket selection process. The consumer is also notified at the top of the screen they have 15 minutes remaining to check out. *See* Figure 24, next page.



**Figure 24**

33.     After a consumer either opts to sign in or proceed as a guest, he or she may scroll to the final "Proceed to payment" screen. *See* Figure 25.



**Figure 25**

34.     To complete the transaction, the site requires the consumer to input their payment information to pay the now final total amount.  *See* Figure 26.



**Figure 26**

**California Location Transaction Flow**

35.     After a consumer selects one of the California locations from the screen shown in Figure 2, he or she is taken to a "BOOK NOW" screen specific to one of Defendant's Shows in the California location.  *See* Figure 27.



**Figure 27**

36.     If a consumer clicks the "BOOK NOW" button, he or she is taken to a "Book Tickets" screen that has a calendar with dates where tickets are still available to purchase for admission to the Show.  *See* Figure 28.



**Figure 28**

37.     Once a consumer clicks on a date where tickets are available, he or she is taken to a screen showing available times to purchase tickets to the Show, with starting prices listed for each time.  *See* Figures 29 and 30, below and next page.



**Figure 29**

1
2
3
4
5
6
7
8



**Figure 30**

9

10    38.    When a consumer clicks a specific time, he or she is brought to another screen to

11  "Select tickets" for purchase, which shows offerings of different ticket types, such as Adult, VIP,

12  or Adult Reduced.  The ticket prices, which increase from the starting prices advertised in Figure

13  29,  are presented below the ticket types.  *See* Figure 31.

14

15

16

17

18

19

20    

21

22

23

24

25    **Figure 31**

26

27

28

39.    However, these are not accurate ticket prices either, because they fail to disclose the total cost of the ticket, inclusive of all mandatory fees that must be paid, in violation of California Unfair Competition Law, Cal. Civ. § 1770(a)(29).  This is confirmed when a consumer actually selects a particular ticket for purchase on this "Select tickets" screen.  If a consumer selects the Adult ticket on Figure 31, the ticket is added to the "Shopping cart" on the side of the screen that shows the total cost of the ticket is *actually* $33.32, not $29.50, because Defendant applied an undisclosed $3.82 fee to the ticket.  The consumer is also told that Defendant "will reserve" the ticket selected and that he or she has "15 minutes to complete the order."  *See* Figures 32 and 33, below and next page.



**Figure 32**



**Figure 33**

40.     When a consumer clicks "Proceed" on Figure 32, he or she is taken to another screen offering additional add-ons to purchase. *See* Figure 34.



**Figure 34**

41.     After a consumer clicks another "Proceed" button, he or she is taken to a screen asking them to either register/log in, or to proceed as a guest and input their personal information. On the side of the screen, a "Purchase overview" is provided presenting a new total: $33.63, which is substantially greater than the original price of the ticket selected by the consumer *before* Defendant disclosed their mandatory fees and taxes at the beginning of the ticket selection process. The consumer is also notified at the top of the screen they have 15 minutes remaining to check out. *See* Figure 35.



**Figure 35**

42.     After a consumer either  opts to sign in or proceed as a guest, he or she may scroll to the final "Proceed to payment" screen.  *See* Figure 36, next page.



**Figure 36**

43.    To complete the transaction, the site requires the consumer to input their payment information to pay the now final total amount.  *See* Figure 37.



**Figure 37**

1

**Maryland Location Transaction Flow**

2

44.    After a consumer selects one of the Maryland locations from the screen shown in

3

Figure 2, he or she is taken to a "BOOK NOW" screen specific to one of Defendant's Shows in the

4

Maryland location.  *See* Figure 38.

5



6

7

8

9

10

11

12

13

14

**Figure 38**

15

45.    If a consumer clicks the "BOOK NOW" button, he or she is taken to a "Book

16

Tickets" screen that has a calendar with dates where tickets are still available to purchase for

17

admission to the Show.  *See* Figure 39.

18

19



20

21

22

23

24

25

26

27

**Figure 39**

28

46.    Once a consumer clicks on a date where tickets are available, he or she is taken to a screen showing available times to purchase tickets to the Show, with starting prices listed for each time. *See* Figures 40 and 41.



**Figure 40**



**Figure 41**

47.     When a consumer clicks a specific time, he or she is brought to another screen to "Select tickets" for purchase, which shows offerings of different ticket types, such as Adult, VIP, or VIP+. The ticket prices, which increase from the starting prices advertised in Figure 40,  are presented below the ticket types.  *See* Figure 42.



**Figure 42**

48.     However, these are not accurate ticket prices either, because they fail to disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid, in violation of the Maryland Ticket Consumer Protection Act, Md. Code, Com. § 13-310.1(b)(2).   This is confirmed when a consumer actually selects a particular ticket for purchase on this "Select tickets" screen.   If a consumer selects the Adult ticket on Figure 42, the ticket is added to the "Shopping cart" on the side of the screen that shows the total cost of the ticket is *actually* $39.74, not $35.50, because Defendant applied an undisclosed $4.24 fee to the ticket.   The consumer is also told that Defendant "will reserve" the ticket selected and that he or she has "15 minutes to complete the order."  *See* Figures 43 and 44, next page.



**Figure 43**



**Figure 44**

49.    When a consumer clicks "Proceed" on Figure 43, he or she is taken to another screen offering additional add-ons to purchase.  *See* Figure 45.



**Figure 45**

50.    After a consumer clicks another "Proceed" button, he or she is taken to a screen asking them to either register/log in, or to proceed as a guest and input their personal information. On the side of the screen, a "Purchase overview" is provided presenting a new total: $42.47, which is substantially greater than the original price of the ticket selected by the consumer *before* Defendant disclosed their ancillary fees and taxes at the beginning of the ticket selection process. The consumer is also notified at the top of the screen they have 15 minutes remaining to check out. *See* Figure 46, next page.



**Figure 46**

51.     After a consumer either opts to sign in or proceed as a guest, he or she may scroll to the final "Proceed to payment" screen.  *See* Figure 47.



**Figure 47**

52.     To complete the transaction, the site requires the consumer to input their payment information to pay the now final total amount.  *See* Figure 48.



**Figure 48**

**Colorado Location Transaction Flow**

53.     After a consumer selects one of the Colorado locations from the screen shown in Figure 2, he or she is taken to a "BOOK NOW" screen specific to one of Defendant's Shows in the Colorado location.  *See* Figure 49.



**Figure 49**

54.    If a consumer clicks the "BOOK NOW" button, he or she is taken to a "Book Tickets" screen that has a calendar with dates where tickets are still available to purchase for admission to the Show.  *See* Figure 50.



**Figure 50**

55.    Once a consumer clicks on a date where tickets are available, he or she is taken to a screen showing available times to purchase tickets to the Show, with starting prices listed for each time.  *See* Figures 51 and 52, below and next page.



**Figure 51**

1
2
3
4
5
6
7
8
9
10
11



**Figure 52**

12
13
14    56.    When a consumer clicks a specific time, he or she is brought to another screen to

15  "Select tickets" for purchase, which shows offerings of different ticket types, such as Adult, VIP,

16  or VIP+.  The ticket prices, which increase from the starting prices advertised in Figure 51,  are

17  presented below the ticket types.  *See* Figure 53.

18
19
20
21
22
23
24
25
26



27

**Figure 53**

28

57.    However, these are not accurate ticket prices either, because they fail to disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid, in violation of the Colorado Consumer Protection in Event Ticket Sales Law, Colo. Rev. Stat. §§ 6-1-720(1)(e), (i).   This is confirmed when a consumer actually selects a particular ticket for purchase on this "Select tickets" screen.  If a consumer selects the Adult ticket on Figure 53, the ticket is added to the "Shopping cart" on the side of the screen that shows the total cost of the ticket is *actually* $39.74, not $35.50, because Defendant applied an undisclosed $4.24 fee to the ticket.  The consumer is also told that Defendant "will reserve" the ticket selected and that he or she has "15 minutes to complete the order."  *See* Figures 54 and 55, below and next page.



**Figure 54**



**Figure 55**

58.    When a consumer clicks "Proceed" on Figure 54, he or she is taken to another screen offering additional add-ons to purchase. *See* Figure 56.



**Figure 56**

59.     After a consumer clicks another "Proceed" button, he or she is taken to a screen asking them to either register/log in, or to proceed as a guest and input their personal information. On the side of the screen, a "Purchase overview" is provided presenting a new total: $43.56, which is substantially greater than the original price of the ticket selected by the consumer *before* Defendant disclosed their ancillary fees and taxes at the beginning of the ticket selection process. The consumer is also notified at the top of the screen they have 15 minutes remaining to check out. *See* Figure 57.



**Figure 57**

60.    After a consumer either opts to sign in or proceed as a guest, he or she may scroll to the final "Proceed to payment" screen.  *See* Figure 58.



**Figure 58**

61.    To complete the transaction, the site requires the consumer to input their payment information to pay the now final total amount.  *See* Figure 59.



**Figure 59**

**Tennessee Location Transaction Flow**

62.    If a consumer begins their transaction on one of the Tennessee locations from the screen shown in Figure 4, he or she is taken to a "BOOK NOW" screen specific to one of Defendant's Shows in the Tennessee location.  *See* Figure 60.



**Figure 60**

63.    If a consumer clicks the "BOOK NOW" button, he or she is taken to a "Book Tickets" screen that has a calendar with dates where tickets are still available to purchase for admission to the Show.  *See* Figure 61.



**Figure 61**

64.     Once a consumer clicks on a date where tickets are available, he or she is taken to a screen showing available times to purchase tickets to the Show, with starting prices listed for each time.  *See* Figures 62 and 63.



**Figure 62**



**Figure 63**

65.     When a consumer clicks a specific time, he or she is brought to another screen to "Select tickets" for purchase, which shows offerings of different ticket types, such as Adult, VIP, or VIP+.  The ticket prices, which increase from the starting prices advertised in Figure 51,  are presented below the ticket types.  *See* Figure 64, next page.



**Figure 64**

66.    However, these are not accurate ticket prices either, because they fail to disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid, in violation of Tennessee's Disclosure of Ticket Pricing Law, Tenn. Code § 47-50-121.  This is confirmed when a consumer actually selects a particular ticket for purchase on this "Select tickets" screen.  If a consumer selects the Adult ticket on Figure 64, the ticket is added to the "Shopping cart" on the side of the screen that shows the total cost of the ticket is *actually* $39.74, not $35.50, because Defendant applied an undisclosed $4.24 fee to the ticket.  The consumer is also told that Defendant "will reserve" the ticket selected and that he or she has "15 minutes to complete the order."  *See* Figures 65 and 66, below and next page.



**Figure 65**

1
2
3
4
5
6
7
8
9
10
11



**Figure 66**

12    67.    When a consumer clicks "Proceed" on Figure 64, he or she is taken to another

13    screen offering additional add-ons to purchase.  *See* Figure 67.

14
15
16
17
18
19
20
21
22
23
24



**Figure 67**

25
26
27
28

68.     After a consumer clicks another "Proceed" button, he or she is taken to a screen asking them to either register/log in, or to proceed as a guest and input their personal information. On the side of the screen, a "Purchase overview" is provided presenting a new total: $43.66, which is substantially greater than the original price of the ticket selected by the consumer *before* Defendant disclosed their ancillary fees and taxes at the beginning of the ticket selection process. The consumer is also notified at the top of the screen they have 15 minutes remaining to check out. *See* Figure 68.



**Figure 68**

69.     After a consumer either opts to sign in or proceed as a guest, he or she may scroll to the final "Proceed to payment" screen.  *See* Figure 69, next page.



**Figure 69**

70.     To complete the transaction, the site requires the consumer to input their payment information to pay the now final total amount.  *See* Figure 70.



**Figure 70**

**Drip Pricing Tricks Consumers Into Overpaying For Tickets**

71.     Moodswings' Shows are one of many places of entertainment that offers consumers the ability to purchase tickets to an entertainment event online, via its website.

72.     "Drip pricing" is a type of bait-and-switch pricing method that refers to "the practice of advertising only part of a product's price upfront and revealing additional charges later as consumers go through the buying process."[7]

73.     Behavioral economists largely agree that drip pricing causes consumers to overpay, by exploiting people's drive to complete a commenced purchase.[8]  By luring people into a transaction with an artificially low price, a website designer can create a sense of commitment from the consumer to the transaction.  By making the consumer click through several screens, the website designer forces the consumer to invest time into the transaction.  After a seller has introduced surprise fees on the final screen, assuming the consumer even notices the fees, the consumer will still be reticent to leave due to a sense they will incur a loss by abandoning the transaction.

**States Ban Drip Pricing In Ticket Sales**

74.     Effective August 29, 2022, New York enacted Arts & Cultural Affairs Law § 25.07(4), which provides that "any licensee or other ticket reseller, or platform that facilitates the sale or resale of tickets shall disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket, and disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge, or any other fee or surcharge to the purchaser.  Such disclosure of the total cost and fees shall be displayed in the ticket listing prior to the ticket being selected for purchase."  *Id*.; *compare with* Figures 5 to 11.

---

[7] Mary W. Sullivan, Fed. Trade Comm'n, Econ. Analysis of Hotel Resort Fees (2017), https://www.ftc.gov/reports/economic-analysis-hotel-resort-fees.
[8] Steffen Huck & Brian Wallace, The impact of price frames on consumer decision making: Experimental evidence, at 1-3 (Oct. 15, 2015).

And "[t]he price of the ticket shall not increase during the purchase process." *Id.*; *compare with* Figures 5 to 11.

75.     Effective October 1, 2023, Connecticut amended its Ticket Scalping law to provide that "[n]o person shall advertise the prices of tickets to any entertainment event, including, but not limited to, any place of amusement, arena, stadium, theater, performance, sport, exhibition or athletic contest given in this state for which a service charge is imposed for the sale of a ticket at the site of the event, without conspicuously disclosing in such advertisement, whether displayed at the site of the event or elsewhere, the total price for each ticket and what portion of each ticket price, stated in a dollar amount, represents a service charge" C.G.S.A. § 53-289a(b); *compare with* Figures 16 to 22.  "Any person that facilitates the sale or resale of a ticket to an entertainment event shall (A) disclose the total price of such ticket, which total price shall include all service charges required to purchase such ticket, and (B) disclose, in a clear and conspicuous manner, to the purchaser of such ticket the portion of the total ticket price, expressed as a dollar amount, that is attributable to service charges charged to such purchaser for such ticket." *Id.* § 53-289a(d)(1). Connecticut law prohibits unfair and deceptive trade practices, providing that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id.* § 42-110b(a).

76.     Effective July 1, 2024, California enacted the "Honest Pricing Law" or "Hidden Fees Statute," prohibiting businesses from "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges" other than government-imposed taxes or fees or reasonable shipping costs.  Cal. Civ. Code § 1770(a)(29); *compare with* Figures 27 to 33.

77.     Effective July 1, 2024, Maryland enacted the Maryland Ticket Consumer Protection Act, which established that "[t]he listing for a ticket and each step of a transaction to purchase a ticket shall: (I) [c]learly and conspicuously disclose the total price of the ticket, including all fees and taxes other than shipping costs that are not determinable at a step in the transaction; [and] (II)

[p]rovide an itemized listing of all charged that comprise the total price of the ticket, including all fees and taxes."  Md. Code, Com. § 13-310.1(b)(2); *compare with* Figures 38 to 44.

78.    Effective August 7, 2024, Colorado enacted the Consumer Protection in Event Ticket Sales Law, which established that it is a deceptive trade practice when a person "[s]ells a ticket to an event without disclosing the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket, the first time a price is displayed to the purchaser and anytime the price is displayed thereafter," or when a person "[s]ells a ticket to an event at a place of entertainment without disclosing in a clear and conspicuous manner the portion of the ticket cost that represents a service charge for the purchase or other fee or surcharge for the purchase."  Colo. Rev. Stat. §§ 6-1-720(1)(e), (f); *compare with* Figures 49 to 55.

79.    Effective July 1, 2023, Tennessee enacted its "Disclosure of Ticket Pricing" law, which states that "[a] third-party ticket reseller, ticket broker, ticket issuer, and ticket resale website shall disclose the total cost of a ticket, including all ancillary fees and service charges, to be paid in order to complete the purchase of a ticket, prior to the ticket being selected for purchase."  Tenn. Code § 47-50-121; *compare with* Figures 62 to 68.  "The information required to be disclosed pursuant to subsection (b) must be disclosed in a clear and conspicuous manner and in dollars. If a ticket is sold through a website, then the information required to be disclosed must be displayed in the ticket listing prior to the ticket being selected for purchase."  *Id.*; *compare* with Figures 62 to 68And, "[t]he price of a ticket sold through a website must not increase after a consumer has selected a ticket for purchase, excluding reasonable fees for delivery of non-electronic tickets based on the delivery method selected by the purchaser prior to payment for the ticket."  *Id.*; *compare with* Figures 62 to 68.

## CLASS ACTION ALLEGATIONS

80.    **New York Class**: Plaintiff Amanda Oliva seeks to represent a class defined as all individuals in the state of New York who purchased tickets to one of Defendant's Shows through its https://tickets.mesmerica.com/ or https://tickets.beautifica.show/ websites on or after August 29,

2022.  Excluded from the New York Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

81.     **Connecticut Class**: Plaintiff Carla Federation seeks to represent a class defined as all individuals in the state of Connecticut who purchased tickets to one of Defendant's Shows through its https://tickets.mesmerica.com/ or https://tickets.beautifica.show/ websites on or after October 1, 2023.  Excluded from the Connecticut Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

82.     **California Class**: Plaintiff Tara Anderson seeks to represent a class defined as all individuals in the state of California who purchased tickets to one of Defendant's Shows through its https://tickets.mesmerica.com/ or https://tickets.beautifica.show/ websites on or after July 1, 2024.  Excluded from the California Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

83.     **Maryland Class**: Plaintiff Elia ("Ellie") Santana seeks to represent a class defined as all individuals in the state of Maryland who purchased tickets to one of Defendant's Shows through its https://tickets.mesmerica.com/ or https://tickets.beautifica.show/ websites on or after July 1, 2024.  Excluded from the Maryland Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

84.     **Colorado Class**: Plaintiff Christopher Dennis seeks to represent a class defined as all individuals in the state of Colorado who purchased tickets to one of Defendant's Shows through its https://tickets.mesmerica.com/ or https://tickets.beautifica.show/ websites on or after August 7, 2024.  Excluded from the Colorado Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

85.     **Tennessee Class**: Plaintiff Lisa Owenby seeks to represent a class defined as all individuals in the state of Tennessee who purchased tickets to one of Defendant's Shows through its https://tickets.mesmerica.com/ or https://tickets.beautifica.show/ websites on or after July 1, 2023.  Excluded from the Tennessee Class is any entity in which Defendant has a controlling interest, and officers or directors of Defendant.

86.    The New York Class, the Connecticut Class, the California Class, the Maryland Class, the Colorado Class, and the Tennessee Class are collectively referred to as the "State Classes."

87.    Members of each of the respective State Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the State Classes number in the hundreds of thousands and possibly millions.  The precise number of members in the State Classes and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant.

88.    Common questions of law and fact exist as to all members of their respective State Classes and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to: (a) whether Defendant failed to disclose the total cost of the ticket, including all ancillary fees, prior to the tickets being selected for purchase in violation of the states' consumer protection laws; (b) whether the displayed price of Defendant's tickets increases during the purchase process in violation of the states' consumer protection laws; and (c) whether Defendant disclosed the fees in an unclear and inconspicuous manner in violation of the states' consumer protection laws.

89.    The claims of the named Plaintiffs are typical of the claims of their respective State Classes in that the named Plaintiffs and their respective State Classes sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to disclose the total cost of its tickets, including Defendant's fees, throughout the online ticket purchase process.

90.    Plaintiffs are adequate representatives of their respective State Classes because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of the Class members in each respective state Class will be fairly and adequately protected by Plaintiffs and their counsel.

91.    The class mechanism is superior to other available means for the fair and efficient

adjudication of the claims of the State Classes. Each individual New York, Connecticut, California, Maryland, Colorado, and Tennessee Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

<u>**COUNT I**</u>
**New York Arts & Cultural Affairs Law § 25.07**
**(On Behalf Of The New York Class)**

92.     Plaintiff Amanda Oliva repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

93.     Plaintiff Oliva brings this claim individually and on behalf of the members of the New York Class against Defendant.

94.     Defendant Moodswings is an "operator or operator's agent" to a "place of entertainment," because it owns and operates locations to its Shows in Buffalo, Staten Island, and Corning, New York, and controls the https://tickets.mesmerica.com/ and https://tickets.beautifica.show/ websites, which are where consumers can purchase tickets to its immersive music and art cinematic projection Shows. "'Place of entertainment' means any privately or publicly owned and operated entertainment facility such as a <u>theatre</u>, stadium, arena, racetrack, museum, amusement park, or other place where <u>performances</u>, <u>concerts</u>, <u>exhibits</u>, athletic games or contests are held for which an entry fee is charged." N.Y. Arts & Cult. Aff. Law § 25.03(6) (emphasis added). "Entertainment' means all forms of entertainment including, but not limited to, <u>theatrical or operatic performances</u>, <u>concerts</u>, <u>motion pictures</u>, all forms of entertainment

at fair grounds, amusement parks and all types of athletic competitions including football, basketball, baseball, boxing, tennis, hockey, and any other sport, and all other forms of diversion, recreation or show." *Id.* § 25.03(1) (emphasis added).  In particular, Defendant operates immersive music and art cinematic projection Shows which are presented in planetariums and giant screen theaters.

95.    Defendant violated New York Arts & Cultural Affairs Law § 25.07(4) by failing to disclose the "total cost of a ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket" prior to the ticket being selected for purchase, as depicted in Figures 5 through 11 of this Complaint. *Id.* § 25.07(4).

96.    Defendant also violated New York Arts & Cultural Affairs Law § 25.07(4) by increasing the price of its tickets during the purchase process, as depicted in Figures 5 through 11 this Complaint. *Id.*

97.    Defendant's "fee" is an "ancillary fee[] that must be paid in order to purchase the ticket." *Id.*

98.    On May 12, 2025, Plaintiff Oliva purchased two tickets to visit Mesmerica 360 in Staten Island, New York using Defendant's website, https://tickets.mesmerica.com/, and was forced to pay Defendant's fee.  Because the total cost of the ticket was not disclosed to Plaintiff Oliva at the beginning of the purchase process, the resulting fee that was applied is unlawful pursuant to New York Arts & Cultural Affairs Law § 25.07(4).  Plaintiff Oliva was harmed by paying this unlawfully applied fee.

99.    Plaintiff Oliva was also harmed by not having the total cost of her tickets disclosed upfront at the start of the purchase process.  By not knowing the total cost of her tickets before she selected her tickets for purchase from Defendant, Plaintiff Oliva could not shop around for tickets from other immersive entertainment experiences.  As such, Plaintiff Oliva had no way of knowing whether she was getting the best deal her money could buy.  By hiding its fees and setting a 15-minute timer on the purchase process, Defendant was able to reduce price competition and cause consumers like Plaintiff Oliva to overpay.

100.    Plaintiff Oliva and New York Class members relied on Defendant's false and misleading representations that the cost of the tickets did not include fees in choosing to purchase their tickets.

101.    At the time Plaintiff Oliva purchased her tickets, she was not aware that Defendant's fee was unlawful under the New York Arts & Cultural Affairs Law.  Plaintiff Oliva was not browsing websites in search of legal violations and, indeed, had no pre-existing relationship with his counsel prior to purchasing her tickets.  Plaintiff Oliva was instead browsing Defendant's website because she sincerely intended to purchase tickets, and she did, in fact, purchase those tickets.

102.    On behalf of herself and members of the New York Class, Plaintiff Oliva seeks to enjoin the unlawful acts and practices described herein, to recover her actual damages or fifty dollars, whichever is greater, and reasonable attorneys' fees.  *See* N.Y. Arts & Cult. Aff. Law § 25.33.

<u>**COUNT II**</u>
**Connecticut Unfair Trade Practices Act, C.G.S.A. §§ 42-110a, *et seq.***
**(On Behalf Of The Connecticut Class)**

103.    Plaintiff Carla Federation repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

104.    Plaintiff Federation brings this claim individually and on behalf of the members of the Connecticut Class against Defendant.

105.    Defendant engaged in deceptive acts or practices in the conduct of their business, trade, and commerce or furnishing of services, in violation of Connecticut Unfair Trade Practices Act, C.G.S.A. §§ 42-110a, *et seq.*, because their deceptive acts occurred in the course of business operations for its entertainment events, Mesmerica 360, Mesmerica XL, and Beautifica 360.

106.    Defendant Moodswings is a "person that facilitates the sale or resale of a ticket to an entertainment event" because it owns and operates the location to its one of its Shows, Mesmerica 360, in New Canaan and Bridgeport, Connecticut, and controls the https://tickets.mesmerica.com/ website, which is where consumers can purchase tickets to one of its entertainment events.  An

"entertainment event" means "any place of amusement, area, stadium, <u>theater</u>, performance, sport, <u>exhibition</u>, or athletic contest."  C.G.S.A. § 53-289a(b) (emphasis added).  In particular, Defendant operates and sells tickets to immersive music and art cinematic projection Shows which are presented in planetariums and giant screen theaters.

107.    Defendant violated Connecticut's Unfair & Deceptive Trade Practices Act by violating Connecticut's Ticket Scalping Law when it "advertise[d] the prices of tickets to [its] entertainment event … for which a service charge is imposed for the sale of a ticket at the site of the event, without conspicuously disclosing in such advertisement, whether displayed at the site of the event or elsewhere, the total price for each ticket and what portion of each ticket price, stated in a dollar amount, represents a service charge," as depicted in Figures 16 to 22 of this Complaint.  *Id.* § 53-289a(b).

108.    Defendant also violated Connecticut's Unfair & Deceptive Trade Practices Act by violating Connecticut's Ticket Scalping Law when it failed to "disclose the total price of such ticket, which total price shall include all service charges required to purchase such ticket" as depicted in Figures 16 to 22 of this Complaint.  *Id.* § 53-289a(d)(1).

109.    The fee that Defendant charges is a service charge "required to purchase such ticket."  *Id.* § 53-289a(d)(1).

110.    On July 15, 2025, and on July 28, 2025, Plaintiff Federation purchased tickets to visit Mesmerica 360 in Bridgeport, Connecticut using Defendant's website, https://tickets.mesmerica.com/, and was forced to pay Defendant's fee.  Plaintiff Federation was harmed by paying this unlawfully applied fee because the total price and the fee were not conspicuously disclosed to her at the start of Defendant's transaction flow, and therefore, is unlawful pursuant to Connecticut's Ticket Scalping Law.

111.    Plaintiff Federation was also harmed by not having the total cost of her tickets disclosed upfront at the start of the purchase process.  By not knowing the total cost of her tickets before she selected her tickets for purchase from Defendant, Plaintiff Federation could not shop around for tickets from other immersive entertainment experiences.  As such, Plaintiff Federation

had no way of knowing whether she was getting the best deal her money could buy. By hiding its fees and setting a 15-minute timer on the purchase process, Defendant was able to reduce price competition and cause consumers like Plaintiff Federation to overpay. For this reason, Plaintiff Federation has suffered an ascertainable loss through the payment of unlawful processing fees.

112.    Plaintiff Federation and Connecticut Class members relied on Defendant's false and misleading representations that the cost of the tickets did not include fees in choosing to purchase their tickets.

113.    Defendant's conduct constitutes an unfair and deceptive trade practice in that the violation of Connecticut's Ticket Scalping Law offends public policy.

114.    At the time Plaintiff Federation purchased her tickets, she was not aware that Defendant's fee was unlawful under Connecticut Law. Plaintiff Federation was not browsing websites in search of legal violations and, indeed, had no pre-existing relationship with his counsel prior to purchasing her tickets. Plaintiff Federation was instead browsing Defendant's website because she sincerely intended to purchase tickets, and she did, in fact, purchase those tickets.

115.    On behalf of herself and members of the Connecticut Class, Plaintiff Federation seeks to enjoin the unlawful acts and practices described herein, to recover her actual damages and reasonable attorneys' fees. *See* C.G.S.A. §§ 42-110g, *et seq.*

## COUNT III
### California Unfair Competition Law, Cal. Civ. § 1770(a)(29)
### (On Behalf Of The California Class)

116.    Plaintiff Tara Anderson repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

117.    Plaintiff Anderson brings this claim individually and on behalf of the members of the California Class against Defendant.

118.    Defendant Moodswings owns and operates locations to its Shows in Modesto, Bakersfield, Oakland, San Diego, Sacramento, and San Jose, California, and controls the https://tickets.mesmerica.com/ and https://tickets.beautifica.show/ websites, which are where consumers can purchase tickets to one of its immersive music and art cinematic projection Shows.

Defendant therefore engages in transactions "intended to result or that results in the sale or lease of goods or services" to consumers.  Cal. Civ. § 1770(a).

119.    Defendant violated California's Unfair Competition Law by "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges[,]" as depicted in Figures 27 through 33 of this Complaint.  *Id.* § 1770(a)(29).

120.    On January 6, 2025, Plaintiff Anderson purchased four tickets to visit Beautifica 360 in Oakland, California using Defendant's website, https://tickets.beautifica.show/, and was forced to pay Defendant's fee.  Because the total cost of the ticket was not disclosed to Plaintiff Anderson at the beginning of the purchase process, the resulting fee that was applied is unlawful pursuant to California's Unfair Competition Law, Cal. Civ. § 1770(a)(29).  Plaintiff Anderson was harmed by paying this unlawfully applied fee.

121.    Plaintiff Anderson was also harmed by not having the total cost of her tickets disclosed upfront at the start of the purchase process.  By not knowing the total cost of her tickets before she selected her tickets for purchase from Defendant, Plaintiff Anderson could not shop around for tickets from other immersive entertainment experiences.  As such, Plaintiff Anderson had no way of knowing whether she was getting the best deal her money could buy.   By hiding its fees and setting a 15-minute timer on the purchase process, Defendant was able to reduce price competition and cause consumers like Plaintiff Anderson to overpay.

122.    Plaintiff Anderson and California Class members relied on Defendant's false and misleading representations that the cost of the tickets did not include fees in choosing to purchase their tickets.

123.    At the time Plaintiff Anderson purchased her tickets, she was not aware that Defendant's fee was unlawful under the California Unfair Competition Law.  Plaintiff Anderson was not browsing websites in search of legal violations and, indeed, had no pre-existing relationship with her counsel prior to purchasing her tickets.  Plaintiff Anderson was instead browsing Defendant's website because she sincerely intended to purchase tickets, and she did, in fact, purchase those tickets.

124.    On behalf of herself and members of the California Class, Plaintiff Anderson seeks to enjoin the unlawful acts and practices described herein.  *See* Cal. Civ. Code § 1780(a)(1).

**COUNT IV**
**Maryland Ticket Consumer Protection Act, Md. Code, Com. § 13-310.1(b)(2)**
**(On Behalf Of The Maryland Class)**

125.    Plaintiff Elia ("Ellie") Santana repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

126.    Plaintiff Santana brings this claim individually and on behalf of the members of the Maryland Class against Defendant.

127.    Defendant Moodswings owns and operates a location to one of its Shows, Mesmerica 360, in Catonsville, Maryland, and controls the https://tickets.mesmerica.com/ website, which is where consumers can purchase tickets to its place of entertainment.  "'Ticket issuer'" includes "1. [a] musician or musical group; 2. [a]n operator of a venue; 3. [a] sponsor or a promoter of an entertainment event; 4. [a] sports team participating in an entertainment event; 5. [a] sports league whose teams are participating in an entertainment event; 6. [a] theater company; 7. [a] marketplace operated for consumers to make an initial purchase of tickets; or 8. [a]n agent of any of the persons listed in items 1 through 7 of this subparagraph."  Md. Code, Com. § 13-310.1(a)(7) (emphasis added).  In particular, Defendant is a "ticket issuer" through its operation of its website https://tickets.mesmerica.com/, which is a marketplace operated for consumers to make an initial purchase of tickets for its immersive music and art cinematic projection show, and is therefore subject to Maryland's Ticket Consumer Protection Act.

128.    Defendant violated Maryland's Ticket Consumer Protection Act by failing to "[c]learly and conspicuously disclose the total price of the ticket, including all fees and taxes other than shipping costs that are not determinable at a step in the transaction" at "the listing and each step" of the transaction, as depicted in Figures 38 to 44 of this Complaint.  *Id.* § 13-310.1(b)(2).

129.    In May 2025, Plaintiff Santana purchased three VIP tickets to visit Mesmerica 360 in Catonsville, Maryland using Defendant's website, https://tickets.mesmerica.com/, and was forced to pay Defendant's fee.  Because the total cost of the ticket was not conspicuously disclosed

to Plaintiff Santana at the beginning of the purchase process, the resulting fee that was applied is unlawful pursuant to Maryland's Ticket Consumer Protection Act, Md. Code, Com. § 13-310.1(b)(2). Plaintiff Santana was harmed by paying this unlawfully applied fee.

130.    Plaintiff Santana was also harmed by not having the total cost of her tickets disclosed upfront at the start of the purchase process. By not knowing the total cost of her tickets before she selected her tickets for purchase from Defendant, Plaintiff Santana could not shop around for tickets from other immersive entertainment experiences. As such, Plaintiff Santana had no way of knowing whether she was getting the best deal her money could buy. By hiding its fees and setting a 15-minute timer on the purchase process, Defendant was able to reduce price competition and cause consumers like Plaintiff Santana to overpay.

131.    Plaintiff Santana and Maryland Class members relied on Defendant's false and misleading representations that the cost of the tickets did not include fees in choosing to purchase their tickets.

132.    At the time Plaintiff Santana purchased her tickets, she was not aware that Defendant's fee was unlawful under the Maryland Ticket Consumer Protection Act. Plaintiff Santana was not browsing websites in search of legal violations and, indeed, had no pre-existing relationship with her counsel prior to purchasing her tickets. Plaintiff Santana was instead browsing Defendant's website because she sincerely intended to purchase tickets, and she did, in fact, purchase those tickets.

133.    On behalf of herself and members of the Maryland Class, Plaintiff Santana seeks to enjoin the unlawful acts and practices described herein, to recover her actual damages and reasonable attorneys' fees. *See* MD Code, Com. § 13-408(a).

<u>**COUNT V**</u>
**Colorado Consumer Protection In Event Ticket Sales Law, Colo. Rev. Stat. §§ 6-1-720(1)(e), (i)**

**(On Behalf Of The Colorado Class)**

134.    Plaintiff Christopher Dennis repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

135.    Plaintiff Dennis brings this claim individually and on behalf of the members of the Colorado Class against Defendant.

136.    Defendant Moodswings owns and operates the location to one of its Shows, Mesmerica 360, in Boulder, Colorado, and controls the https://tickets.mesmerica.com/ website, which is where consumers can purchase tickets to its Shows.  In particular, Defendant operates an immersive music and art cinematic projection show which is presented in planetariums and giant screen theaters.

137.    Defendant violated Colorado's Consumer Protection in Event Ticket Sales Law by selling "a  ticket to an event at a place of entertainment without disclosing the total ticket cost, inclusive of all ancillary fees that must be paid in order to purchase the ticket, the first time a price is displayed to the purchaser and anytime the price is displayed thereafter[,]" as depicted in Figures 49 to 55 of this Complaint.  Colo. Rev. Stat. § 6-1-720(1)(e)(I).

138.    Defendant also violated Colorado's Consumer Protection in Event Ticket Sales Law by "increas[ing] the total price of a ticket after the first time a price is displayed to the purchaser" without fitting into any of the statutory exemptions, as depicted in Figures 49 to 55 of this Complaint.  *Id.* § . § 6-1-720(1)(i).

139.    In January of 2025,  Plaintiff Dennis purchased four VIP tickets to visit Mesmerica 360 in Boulder, Colorado using Defendant's website, https://tickets.mesmerica.com/, and was forced to pay Defendant's fee.  Plaintiff Dennis was harmed by paying this unlawfully applied fee. Because the total cost of the ticket was not disclosed to Plaintiff Dennis at the beginning of the purchase process, and because the total price of the ticket increased after the first time it was presented to the purchaser, the resulting fee that was applied is unlawful pursuant to Colorado Consumer Protection in Event Ticket Sales Law, Colo. Rev. Stat. Colo. Rev. Stat. §§ 6-1-720(1)(e), (i).  Plaintiff Dennis was harmed by paying this unlawfully applied fee.

140.    Plaintiff Dennis was also harmed by not having the total cost of his tickets disclosed upfront at the start of the purchase process.  By not knowing the total cost of her tickets before she selected her tickets for purchase from Defendant, Plaintiff Dennis could not shop around for tickets

from other immersive entertainment experiences. As such, Plaintiff Dennis had no way of knowing whether he was getting the best deal his money could buy. By hiding its fees and setting a 15-minute timer on the purchase process, Defendant was able to reduce price competition and cause consumers like Plaintiff Dennis to overpay.

141. Plaintiff Dennis and Colorado Class members relied on Defendant's false and misleading representations that the cost of the tickets did not include fees in choosing to purchase their tickets.

142. At the time Plaintiff Dennis purchased his tickets, he was not aware that Defendant's fee was unlawful under Colorado's Consumer Protection in Event Ticket Sales Law. Plaintiff Dennis was not browsing websites in search of legal violations and, indeed, had no pre-existing relationship with his counsel prior to purchasing his tickets. Plaintiff Dennis was instead browsing Defendant's website because he sincerely intended to purchase tickets, and he did, in fact, purchase those tickets.

143. On behalf of himself and members of the Colorado Class, Plaintiff Dennis seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages and reasonable attorneys' fees. *See* Colo. Rev. Stat. § 6-1-113(2.9).

<u>COUNT VI</u>
**Tennessee Disclosure Of Ticket Pricing Law, Tenn. Code § 47-50-121**
**(On Behalf Of The Tennessee Class)**

144. Plaintiff Lisa Owenby repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

145. Plaintiff Owenby brings this claim individually and on behalf of the members of the Tennessee Class against Defendant.

146. Defendant Moodswings owns and operates locations to its Shows in Kingsport and Nashville, Tennessee, and controls the https://tickets.mesmerica.com/ and https://tickets.beautifica.show/ websites, which are where consumers can purchase tickets to its places of entertainment. "'Place of entertainment': (A) [m]eans a privately or publicly owned facility for entertainment for which an entry fee is charged; and (B) [i]ncludes a theater, stadium,

arena, racetrack, museum, amusement park, or other place where performances, <u>concerts</u>, <u>exhibits</u>, or athletic games or contests are held ….." Tenn. Code § 47-50-121(a)(2) (emphasis added). "'Entertainment'" means "a form of diversion, recreation, or show[,]" including "(i) <u>[t]heatrical or operatic performances</u>; (ii) [c]oncerts; (iii) [m]otion pictures; (iv) [s]hows or events at fair grounds; (v) [a]musement parks; and (vi) [a]thletic games or competition, including football, basketball, baseball, boxing, tennis, hockey, or another sport …." *Id.* § 47-50-121(a)(1) (emphasis added).  In particular, Defendant operates and issues tickets to immersive music and art cinematic projection Shows which are presented in planetariums and giant screen theaters.

147.    Defendant violated Tennessee's Disclosure of Ticket Pricing Law by failing to "disclose the total cost of a ticket, including all ancillary fees and service charges, to be paid in order to complete the purchase of a ticket, prior to the ticket being selected for purchase[,]" as depicted in Figures 60 to 70 of this Complaint.  *Id.* § 47-50-121(b).

148.    Defendant also violated Tennessee's Disclosure of Ticket Pricing Law by failing to disclose the total cost of a ticket on their website, including all ancillary fees and services charges, "in a clear and conspicuous manner and in dollars ….  prior to the ticket being selected for purchase[,]" as depicted in Figures 49 to 55 of this Complaint.  *Id.* § 47-50-121(c).

149.    Defendant also violated Tennessee's Disclosure of Ticket Pricing Law, because the "price of a ticket sold through a website must not increase after a consumer has selected a ticket for purchase, excluding reasonable fees for delivery of non-electronic tickets based on the delivery method selected by the purchaser prior to payment for the ticket[,]"  as depicted in Figures 49 to 55 of this Complaint.  *Id.* § 47-50-121(d).

150.    In June of 2025,  Plaintiff Owenby purchased two tickets to visit Mesmerica 360 in Kingsport, Tennessee using Defendant's website, https://tickets.mesmerica.com/, and was forced to pay Defendant's fee.  Plaintiff Owenby was harmed by paying this unlawfully applied fee.  Because the total cost of the ticket was not disclosed to Plaintiff Owenby at the beginning of the purchase process, and because the price of the ticket increased after it was already selected for purchase, the resulting fee that was applied is unlawful pursuant to Tennessee's Disclosure of

Ticket Pricing Law, Tenn. Code § 47-50-121. Plaintiff Owenby was harmed by paying this unlawfully applied fee.

151. Plaintiff Owenby and Tennessee Class members relied on Defendant's false and misleading representations that the cost of the tickets did not include fees in choosing to purchase their tickets.

152. At the time Plaintiff Owenby purchased her tickets, she was not aware that Defendant's fee was unlawful under Tennessee's Disclosure of Ticket Pricing Law. Plaintiff Owenby was not browsing websites in search of legal violations and, indeed, had no pre-existing relationship with their counsel prior to purchasing her tickets. Plaintiff Owenby was instead browsing Defendant's website because she sincerely intended to purchase tickets, and she did, in fact, purchase those tickets.

153. On behalf of herself and members of the Tennessee Class, Plaintiff Owenby seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages and reasonable attorneys' fees. *See* Tenn. Code § 47-18-109(a)(1).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of the members of their respective Class, prays for judgment as follows:

(a)     For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

(b)     For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)     For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(d)     For compensatory and statutory damages in amounts to be determined by the Court and/or jury;

(e)     For prejudgment interest on all amounts awarded;

(f)    For an order of restitution and all other forms of equitable monetary relief;

(g)    For injunctive relief as pleaded or as the Court may deem proper; and

(h)    For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and
expenses and costs of suit.

Dated:  July 29, 2025                            Respectfully submitted,

                                                **BURSOR & FISHER, P.A.**

                                                By:_____/s/ Stefan Bogdanovich_____
                                                          Stefan Bogdanovich

                                                Stefan Bogdanovich (State Bar No. 324525)
                                                1990 North California Blvd., 9th Floor
                                                Walnut Creek, CA  94596
                                                Telephone: (925) 300-4455
                                                Facsimile: (925) 407-2700
                                                Email:  sbogdanovich@bursor.com

                                                Philip L. Fraietta (State Bar No. 354768)
                                                Eleanor R. Grasso (*Pro Hac Vice Forthcoming*)
                                                1330 Avenue of the Americas, 32nd Floor
                                                New York, NY 10019
                                                Telephone: (646) 837-7150
                                                Facsimile: (212) 989-9163
                                                E-Mail: pfraietta@bursor.com
                                                            egrasso@bursor.com


                                                *Attorneys for Plaintiffs*